[Cite as *State v. Gilbert*, 2026-Ohio-2655.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


STATE OF OHIO,                          :

    Appellee,                          :

vs.                                     :

ARLIE GILBERT,                          :

    Appellant.                         :

                                       :

CASE NO. CA2025-11-111

OPINION AND
JUDGMENT ENTRY
7/13/2026


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 25CR42706


David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Timothy J. McKenna, for appellant.


# **O P I N I O N**

**SIEBERT, J.**

{¶ 1}   Arlie Gilbert appeals his conviction in the Warren County Court of Common Pleas for one count of gross sexual imposition by force. Gilbert argues his conviction was supported by insufficient evidence and was against the manifest weight of the evidence

because the State presented no physical evidence of Gilbert's guilt and the victim, according to Gilbert, was not credible. Gilbert also asserts the trial court should have sentenced him to community control and placed him in treatment because, among other reasons, he believed prison made him a worse person. We overrule these assignments of error. Ohio law is clear that no physical evidence, including DNA testing, is required to support a conviction. Indeed, the testimony of a single witness, if believed, is enough. The jury is in the best position to determine witness credibility. Moreover, Ohio statutes gave the trial court discretion to impose prison time instead of community control, regardless of the defendant's wishes.

**Background**

{¶ 2}   Jane's[1] Mother began dating Gilbert in September of 2024. One evening approximately two months later in November 2024, Jane and Mother went to Gilbert's home where they and Gilbert's own children ate dinner together. However, Mother later left for a night shift at work, leaving Jane to stay with the Gilberts. Jane testified at trial that while watching television with the Gilberts on a shared couch and under a shared comforter, Gilbert shifted toward her, scratched his own leg and then hers before proceeding to move his hand higher, gripping her thigh tightly. Gilbert then progressed to her inner thigh before his hand began moving up and down Jane's vagina. Jane wore thin sweatpants and underwear at the time. During this series of events, Jane testified that she froze and felt anxious and scared. Jane believed she could not simply get up and leave because she was staying the night and her phone was across the room charging.

{¶ 3}   When Gilbert rose to put his children to bed, Jane retrieved her phone and

---

1. "Jane," is a pseudonym adopted for this opinion for the purposes of the purposes of privacy and readability. *See* State v. Cansler, 2025-Ohio-2558, ¶ 1, fn. 1 (12th Dist.), *Supreme Court of Ohio Writing Manual* 115 (3rd Ed. 2024). "Joe," used later in this opinion, is also a pseudonym.

contacted her friend Joe via Snapchat and by phone. Joe testified Jane was scared and whispering while telling him what had happened. According to Joe, Jane reported that Gilbert grabbed and squeezed her thigh, but she did not mention vaginal touching. Mother and Jane also communicated via Snapchat that night, but Jane did not bring up the incident because she wanted to speak with Mother in person. The next day, when Jane told Mother what happened, Mother initially laughed the matter off and asked if was an accident. After Jane explained the incident in more detail, Mother brought Gilbert into the room to apologize. Jane testified that Gilbert told her he "didn't mean anything by it," and Mother allowed him to stay the night. Several days later, Jane disclosed the incident to her therapist (Jane has a documented history of depression and anxiety) who then notified her parents and law enforcement. Jane also texted another friend about the incident and later told that friend in person that Gilbert touched her vagina.

{¶ 4} A detective with the Warren County Sheriff's Office later spoke with Jane and determined the matter should be further investigated. The detective had concerns that Mother remained with Gilbert and thus limited the information provided to Mother. The detective also spoke with Gilbert. Gilbert described his and Jane's relationship as "good or great." According to the detective, Gilbert and Jane talked regularly and even said "I love you at the end of the night to each other." The detective testified that several days after their initial conversation, Gilbert contacted the detective wanting an update on the case and stated he had surveillance cameras in the house and footage to prove he did not inappropriately touch Jane. However, the detective stated that when asked for the footage, Gilbert would not provide it.

{¶ 5} According to the detective, no DNA testing was performed by law enforcement due to the fragility of DNA evidence, particularly on clothing. In addition, law enforcement did not collect DNA for a rape kit because the case did not involve

penetration or other skin to skin contact.

{¶ 6} The defense called Mother as its sole witness. Mother remained with Gilbert throughout the proceedings, and they had a child together approximately two weeks before the trial. Mother asserted Jane exhibited jealousy about the relationship and Gilbert's children as their families began to intermingle more. For example, when Mother held the hand of one of Gilbert's children at a festival, Jane cried later that day and stated she wanted to kill herself. At that point, Mother contacted Jane's therapist by phone for an impromptu remote session. At trial, Jane acknowledged she cried and spoke with her therapist that day. Jane asserted she was overstimulated with all of them attending the festival. Mother also testified that Jane would ask if Mother and Gilbert would get married, move in together, and have children. Despite all of this, Mother also stated Jane and Gilbert "had a pretty good relationship" up until the night of the incident.

{¶ 7} Much of the jury trial focused on Jane's credibility. When asked if she considered herself a "truthful person," Jane answered "Yes." However, Jane admitted to lying to her parents in the past and that her truthfulness "depend[ed] on the topic." In addition, Mother testified to seeing "a lot of changes" in Jane and asserted she "caught [Jane] in a few lies" at times. Mother also testified that Jane's description of how Gilbert touched her was "inconsistent," with Jane originally reporting touching of just the leg, then her thigh, then her vagina. According to Mother "that was all in like [a] minute time span where she kept kind of changing her story." Ultimately, Mother did not believe Jane.

{¶ 8} The jury found Gilbert guilty of gross sexual imposition. At sentencing, the trial court imposed a sentence of 18 months in prison. Gilbert was classified a Tier I sex offender and advised of five years mandatory postrelease control for felony sex offenses.

{¶ 9} Gilbert now appeals.

**First and Second Assignments of Error – Sufficiency
and Manifest Weight of the Evidence[2]**

{¶ 10} Gilbert argues his conviction was unsupported by sufficient evidence and against the manifest weight of the evidence. He bases these arguments largely on grounds that Jane's testimony alone was insufficient and that she was not a credible witness. We disagree.

*Applicable Law*

{¶ 11} Ohio law states, "No person shall have sexual contact with another . . . [when] [t]he offender purposely compels the other person . . . to submit by force or threat of force." R.C. 2907.05(A)(1). "Sexual Contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). A person acts purposely when it is the person's specific intention to cause a certain result . . . regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). Importantly, "A victim need not prove physical resistance" for a defendant to be guilty. R.C. 2907.05(D).

*Standard of Review*

{¶ 12} "When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."

---

2. The second assignment of error listed in the table of contents and in the body of Gilbert's brief are unrelated to his actual convictions or his appeal (murder and felonious assault as opposed to gross sexual imposition). This violates Loc.R. 11(B)(3). *Wightman v. Darty*, 2023-Ohio-3748, ¶ 12, fn. 3 (12th Dist.). However, the substance of the assigned error does accurately reflect the proper legal standards for a manifest weight of the evidence argument and also applies the facts of Gilbert's case to those standards. We assume that Gilbert's actual assignment of error is the one found in the body of the brief. *State v. Runion*, 2022-Ohio-2461, ¶ 6, fn. 1 (12th Dist.).

*State v. Madden*, 2024-Ohio-2851, ¶ 31 (12th Dist.). Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds as stated in State v. Smith*, 1997-Ohio-355, ¶ 49, fn. 4.

{¶ 13} "A manifest weight of the evidence challenge examines the 'inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other.'" *Madden* at ¶ 32, quoting *State v. Barnett*, 2012-Ohio-2372, ¶ 14 (12th Dist.). To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Graham*, 2009-Ohio-2814, ¶ 66 (12th Dist.).

{¶ 14} In reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Zitney*, 2021-Ohio-466, ¶ 15 (12th Dist.).

{¶ 15} "[A]lthough the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, '[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency.'" *State v. Billingsley*, 2020-Ohio-2673, ¶ 15 (12th Dist.), quoting

*State v. Jones*, 2013-Ohio-150, ¶ 19 (12th Dist.).

*Analysis*

{¶ 16} Gilbert argues his conviction was supported by insufficient evidence of any sexual contact because "there was no physical evidence of touching of [Jane's] private area," and Jane only told Joe—whom she texted and spoke with immediately after the incident—that Gilbert grabbed her thigh and did not mention her vagina.

{¶ 17} Gilbert's argument ignores the fundamental truism in criminal law that the testimony of a single witness can support a conviction if that testimony is believed. *State v. Cansler*, 2025-Ohio-2558, ¶ 22 (12th Dist.). As a result, "[p]hysical evidence, like DNA or fingerprints, is not required to sustain a conviction." *Id.* Here, the State presented largely testimonial evidence to prove that gross sexual imposition occurred. Such testimony, even Jane's testimony standing alone without corroborating DNA evidence, was enough to convict Gilbert if the jury believed her (which it did).

{¶ 18} This notion leads to Gilbert's second assignment of error. Gilbert also asserts his conviction was against the manifest weight of the evidence because Jane was not a credible witness. Gilbert claims "[i]t is not unreasonable after reviewing the record to conclude that [Jane] had a fear of being replaced by a new family, and in reaction to that, her behaviors first escalated to lying, then to acting out at a festival and crying . . . then to threatening suicide at the festival, then to making these accusations."

{¶ 19} But this court firmly holds that, "a manifest weight of the evidence analysis does not represent an opportunity to merely relitigate witness credibility issues." *State v. Montgomery*, 2025-Ohio784, ¶ 33 (12th Dist.). The jury was in the best position to evaluate what (if any) impact Jane's admitted depression and anxiety, her statement that her truthfulness "depend[ed] on the topic," the varying level of detail in her recounting of events to other witnesses, and the dynamics within her family had on her credibility.

Gilbert is correct that the jury *could* have looked at factors such as these and determined Jane made up her accusations in a fit of jealousy. But these factors did not preclude the jury from believing that Gilbert did in fact commit gross sexual imposition by force. Ultimately, Gilbert does not give us "any justifiable reason to second-guess the credibility determinations" of the jury, and his "conviction is not against the manifest weight of the evidence simply because the trier of fact believed the testimony and evidence presented by the [S]tate." *State v. Nelson*, 2024-Ohio-5750, ¶ 23 (12th Dist.).

{¶ 20} We overrule Gilbert's first two assignments of error.

### Third Assignment of Error – Community Control Versus Prison Term

*Applicable Law and Standard of Review*

{¶ 21} As applicable in this case, Ohio law gives a trial court discretion to impose a prison sentence on defendants convicted of a fourth- or fifth-degree, non-violent felony if (1) the offense was a sex offense, or (2) the defendant previously served a prison term. R.C. 2929.13(B)(1)(b)(iv), (ix). Gilbert's conviction is a felony of the fourth degree. R.C. 2907.05(C)(1). To prevail on an appeal related to improper sentencing, an appellant must present clear and convincing evidence that the sentence is not supported by the record or is "otherwise contrary to law." R.C. 2953.08(G)(2).

*Analysis*

{¶ 22} In his final assignment of error, Gilbert argues the trial court erred in sentencing him to a prison term because the trial court did not consider Gilbert's adherence to the terms of his bond prior to trial, stated desire to undergo treatment, and assertion that his prior time in prison made him a "worse person." Put simply, none of this speaks as to why his sentence is not supported by the record or contrary to the law. The jury found Gilbert guilty of a fourth-degree felony sex offense, and Gilbert acknowledges having served time in prison previously. As a result, R.C. 2929.13(B)(1)(b) gave the trial

court discretion to impose a prison term. Gilbert's preference for community control and treatment for a crime he asserts he did not commit does not overcome the discretion granted to the trial court to impose a prison term. We overrule Gilbert's final assignment of error.

{¶ 23} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Robert A. Hendrickson, Presiding Judge*

*/s/ Robin N. Piper, Judge*

*/s/ Melena S. Siebert, Judge*